[No. 12461. Department Two. September 27, 1915.]

JULIUS KASPER, *Respondent*, v. SPOKANE MERCHANTS'
ASSOCIATION, *Appellant*, HANNAH R. COHN,
*Defendant*.[1]

APPEAL—RECORD—ABSTRACT—SUFFICIENCY. An appeal will not be dismissed for a too literal transcript of the records in the abstract, where there has been a good faith attempt to comply with the law, and the departure has not worked inconvenience; especially in view of the Laws of 1915, p. 300, dispensing with the necessity of an abstract under the circumstances.

FRAUDULENT CONVEYANCES—SALES-IN-BULK ACT—TITLE OF VENDEE —STATUTES. The sales-in-bulk act, Rem. & Bal. Code, § 5297, declaring sales of stocks of goods in bulk to be fraudulent and void, unless accompanied by the required affidavit and list of creditors, means void as to creditors only, and title passes as between the vendor and vendee; since the act was intended only for the protection of creditors.

SAME—SALES-IN-BULK—REMEDIES OF CREDITORS—BONA FIDE PURCHASERS. Since the sales-in-bulk act does not give creditors any specific lien on the property fraudulently conveyed, but simply makes noncompliance with the statute conclusive evidence of fraud, the remedy of creditors is confined to pursuing the property in the hands of the wrongdoers, or others with notice, or the wrongdoers personally for conversion; and they cannot pursue the property in the hands of *bona fide* purchasers for value.

SAME—SALES-IN-BULK — "PURCHASER" — ASSIGNEE FOR CREDITORS. An assignee for the benefit of creditors is not a purchaser of a stock of goods in bulk, within the meaning of the sales-in-bulk act, Rem. & Bal. Code, § 5296 *et seq.*, requiring the vendor to make an affidavit and list of his creditors.

ASSIGNMENTS FOR BENEFIT OF CREDITORS — NOTICE — RECORDING— REMEDIES OF CREDITOR—LACHES. An assignment for the benefit of creditors, filed of record as required, is constructive notice to a creditor who was not included among the creditors listed; hence such a creditor must take notice thereof, and protect himself in the administration proceedings, it being too late to proceed against the assignee as a wrongdoer after administration of the trust.

Appeal from a judgment of the superior court for Stevens county, Sessions, J., entered May 25, 1914, in favor of the

[1]Reported in 151 Pac. 800.

plaintiff in garnishment proceedings, tried to the court. 'Reversed.

*J. D. Campbell* and *J. B. Campbell,* for appellant.
*Jesseph & Bourland* and *R. A. Thayer,* for respondent.

FULLERTON, J.—On November 10, 1910, the respondent, Julius Kasper, owned and conducted a merchandise store in the city of Colville, in this state, and on the day named, sold the same to the defendant, Hannah R. Cohn, taking from her as a part of the purchase price certain promissory notes aggregating $1,413.65. Mrs. Cohn entered into possession of the property and conducted the business until March 7, 1911, when she sold the same to the Colville Toggery, a corporation. The corporation carried on the business until January 5, 1912, when, because of failing circumstances, it made a common law assignment of the property to the Spokane Merchants' Association, a corporation, for the benefit of its creditors, a list of which was attached to the assignment. The association placed the assignment of record in the county in which the property was situated, took possession of the property, converted it into cash, and distributed the cash *pro rata* among the creditors named in the list, retaining only sufficient to pay the costs of administration.

The last of the notes given by Cohn to Kasper became due on July 10, 1910, and, none of them being paid, Kasper began an action shortly thereafter to recover thereon. Judgment in his favor was rendered on January 10, 1912. On April 16, 1913, some fifteen months after the assignment had been made to the merchants' association, and after it had disposed of the property and distributed the proceeds among the creditors of its assignor, Kasper caused a writ of garnishment to issue upon the judgment against the association, averring in his affidavit for the writ that the transfers of the property from Cohn to the Colville Toggery and from the Colville Toggery to the association were fraudulent and void, be-

cause the sale from Cohn to the Colville Toggery was made without a compliance with the act of March 16, 1901, Laws 1901, ch. 109, p. 222 (Rem. & Bal. Code, § 5296 *et seq.;* P. C. 203 § 9), commonly known as the sales-in-bulk law. The association controverted the affidavit of garnishment, and a trial was had thereon, resulting in a judgment against it for the full amount of the judgment recovered by Kasper in his action against Cohn.    The association appeals.

The respondent moves to dismiss the appeal, basing his motion on the contention that the appellant's abstract does not comply with the statutes or the rules of the court relating to abstracts; the precise objection being that the appellant has made a too literal transcript of the documents attempted to be abstracted.    But were we to regard the remedy sought to be still applicable, we could not find there has been here such a departure from correct practice as to require us to visit on the appellant the harsh remedy sought by the respondent.    There was a good faith attempt made to abstract the record; and while we think some parts of it which are set forth verbatim could have been abbreviated without loss of meaning, the departure has not been so gross as to inconvenience either the court or, we think, the opposing counsel. Moreover, the record is such that, under the late act of the legislature (Laws 1915, p. 300), no abstract is required. While, perhaps, the statute cited has no retroactive effect, the court will recognize it as an expression of the legislative will, and will not dismiss existing appeals for causes, although formerly regarded as sufficient, which are contrary to the express prohibition of the act.    The motion is denied.

In its holding on the merits of the controversy, we think the trial court was in error.    The first section of the sales-in-bulk law (Rem. & Bal. Code, § 5296, *supra*) makes it the duty of every person who shall purchase any stock of goods, wares or merchandise in bulk, before paying any part of the purchase price, to take from the vendor a statement con-

taining the names and addresses of all of his creditors, together with the amount of his indebtedness to each creditor, which statement shall be verified by the vendor to the effect that it contains the names of all such creditors, and is otherwise true and correct.

The second section (Id., § 5297) reads as follows:

"Whenever any person shall bargain for, or purchase any stock of goods, wares or merchandise in bulk, for cash, or on credit, and shall pay any part of the purchase price, or execute or deliver to the vendor thereof, or to his order, or to any person for his use, any promissory note, or other evidence of indebtedness for said purchase price, or any part thereof, without first having demanded and received from said vendor, or from his agent, the statement provided for in section 5296 and verified as there provided, and without paying, or seeing to it that the purchase money of the said property, is applied to the payment of the *bona fide* claim of the creditors of the vendor as shown upon such verified statement, share and share alike, such sale, or transfer shall be fraudulent and void."

The fourth section (3 Rem. & Bal. Code, § 5299) provides:

"Any sale or transfer of a stock of goods, wares or merchandise, or all or substantially all, of the fixtures and equipment used in and about the business of the vendor, out of the usual or ordinary course of business or trade of the vendor, or whenever substantially the entire business or trade theretofore conducted by the vendor, shall be sold or conveyed or whenever an interest in or to the business or trade of the vendor is sold or conveyed, or attempted to be sold or conveyed, shall be deemed a sale and transfer in bulk in contemplation of this act: Provided, however, That if such vendor produces and delivers a written waiver of the provisions of this act from his creditors as shown by such verified statements then and in that case the provisions of this section shall not apply."

The first of the sections above quoted, it will be observed, declares sales made without a compliance with the provisions of the act fraudulent and void. It is manifest, however, that the meaning is fraudulent and void as to the creditors of the

vendor. The purpose of the statute being to protect the creditors of the vendor, not the vendor himself, its language must be construed to effectuate the purpose intended. Hence, it follows that, as between the vendor and vendee, title will pass to the property by a sale in bulk, notwithstanding a want of compliance with the statutory requirements. Again, it will be observed that the act does not purport to vest title in the creditors of the vendor to property so conveyed, nor does it give such creditors a specific lien upon such property; the transfer is simply, as to them, conclusively established by the statute to be fraudulent and void. Their right in the premise and remedy for the wrong are not, therefore, different from the right and remedy of any other creditor whose debtor has disposed of his property in fraud of his creditors; they may pursue the property in the hands of the wrongdoers or in the hands of those who take it with knowledge of the wrong; or, in the alternative, may pursue the wrongdoers personally as for a conversion of the property.

But the statute does not confer upon the creditors of a vendor who transfers his goods, wares or merchandise in bulk without a compliance with this statute the right to pursue the property into whosesoever hands it may fall. The creditor having neither title to nor a lien upon the property, but only an inchoate right to have the property subjected to his debt, the rule of *caveat emptor* does not apply. He must, therefore, show that the holder or converter of the property is the fraudulent vendee himself, or some person who took the property from the fraudulent vendee with knowledge of the fraudulent transfer. If this be not the rule, a creditor of a fraudulent vendor could permit such vendor to continue the business purchased, sell the goods to customers in the ordinary course of trade, and, after the property is exhausted, pursue the purchasers as for a conversion of the goods; thus permitting the act to operate in restraint of trade, and as a fraud upon the innocent; things not intended, in our judgment, by

the framers of the act or by the legislature which enacted it into law.

Tested by these principles, there can be no recovery in this proceeding against the appellant association. It affirmatively appears in the record that the association had no knowledge, at the time it took the assignment from the Colville Toggery, either that there had not been a compliance with the sales-in-bulk law in the sale from Cohn to that corporation, or that Kasper was a creditor of Cohn on account of her purchase of the goods from him. Conceding, therefore, that the association was in fact a purchaser of the stock of goods in virtue of the assignment, it was a purchaser from the fraudulent vendee of the goods for value and in good faith, not in itself a party to the fraudulent transfer, and hence not liable as for a conversion of the property.

But our conclusion may be rested on another ground. We held in *McAvoy v. Jennings*, 44 Wash. 79, 87 Pac. 53, that a common law assignment by a failing debtor of his stock of merchandise for the benefit of his creditors, or such of them as would comply with certain specified conditions, was not a sale within the meaning of the sales-in-bulk law; that the object of the sales-in-bulk law "was to prevent the vendor, generally a retail merchant, from escaping his responsibilities to his creditors by disposing of all his stock, pocketing the proceeds, and leaving his creditors without redress," and that no such result followed where the property was so disposed of as to make it available to the creditors, and hence the reason for the rule failing, the rule itself failed. This being the rule, it follows that the respondent cannot, at this late day, recover from the assignee. True, he was not numbered among the creditors listed to the assignee by its assignor, but the assignment was placed of record, and being an instrument which the law authorizes to be recorded, was constructive notice to him of the conditions on which the assignee held the property. His remedy, if any he had, was to take such steps as were necessary to protect his rights while the

trust was being administered. Since the assignee was in no sense a wrongdoer, the respondent could not wait until the trust was closed and the fund distributed, and then recover from the assignee as for a wrong.

The case chiefly relied upon by the respondent to maintain the judgment is *Friedman v. Branner,* 72 Wash. 338, 130 Pac. 360, but that was a proceeding by a creditor of the vendor in the fraudulent transfer against the vendee therein. Clearly, under all rules, he was liable to such creditor. But it does not follow that the vendee's vendee, if a purchaser in good faith and without notice, would be so liable, and this marks the distinction between that case and the case at bar.

The judgment is reversed, and the cause remanded with instructions to enter a judgment in favor of the appellant, defendant below.

MORRIS, C. J., ELLIS, and MAIN, JJ., concur.