[No. 14264.   Department Two.   January 31, 1918.]

WILLIAM MASKELL *(Fidelity & Deposit Company of Maryland, Assignee), Appellant,* v. SPOKANE CYCLE & AUTO SUPPLY COMPANY *et al., Respondents,* J. D. ALEXANDER *et al., Defendants.*[1]

FRAUDULENT CONVEYANCES—BULK SALES LAW—RIGHTS OF CREDITORS—"CASH"—STATUTES. A transfer in good faith by a debtor to a corporation in consideration of the issuance of shares of its capital stock, is not a "sale" of a stock of goods in bulk for "cash" or "on credit," within Rem. Code, §§ 5296, 5297, requiring the seller to make a sworn statement to his creditors.

Appeal from a judgment of the superior court for Spokane county, Oswald, J., entered March 27, 1917, in favor of the garnishee defendants, after a trial before the court upon an agreed statement of facts. Affirmed.

*Danson, Williams & Danson (George D. Lantz,* of counsel), for appellant.

*Graves, Kizer & Graves,* for respondents.

HOLCOMB, J.—Appellant instituted garnishment proceedings against respondents, averring that the assignor of appellant was a creditor of the defendants Alexander; that, at a time when he was such, they transferred a stock of goods to the respondent corporation and failed to comply with the bulk sales law, and that the individual respondent holds the stock of goods as a common law assignee for the benefit of the corporation's creditors.

The facts are stipulated as follows: J. D. Alexander was engaged in the bicycle and motorcycle business in Spokane. On September 6, 1914, William Mas-

[1]Reported in 170 Pac. 350.

kell received personal injuries through the negligence of one of Alexander's employees. On September 23, 1914, the Spokane Cycle & Auto Supply Company was incorporated by Alexander and other parties acting in his interest. The capital stock was $125,000, divided into 1,250 shares of the par value of $100. On October 15, 1914, Alexander transferred his entire business, credits, good will, etc. to the corporation, and 750 shares of its capital stock were issued to him. The remainder of the capital stock was never issued. At the time of the transfer, Alexander owed on bills and accounts payable approximately $23,000. There was then owing to him on bills and accounts receivable approximately $27,000, and the value of the merchandise, excluding credits, fixtures, good will, etc., transferred by him to the corporation, was $45,000. All of Alexander's indebtedness, save $6,800 for which the corporation gave its notes, was afterwards paid by it; it collected all the indebtedness owing to him and continued to carry on the business as he had theretofore conducted it. Alexander received all the stock issued, as the consideration for the transfer of his business to the corporation, and he was always the only real shareholder, other holdings being purely formal for the purpose of completing the corporate organization.

In December, 1914, Maskell brought an action against Alexander to recover damages for the injuries sustained by him through the negligence of Alexander's employee. The action was contested, liability being denied, but resulted in a judgment for $4,000 and costs against Alexander. Desiring to appeal, he applied to the Fidelity & Deposit Company of Maryland to execute a supersedeas bond to stay the judgment pending the appeal. The fidelity company knew that Alexander had transferred his business to the cycle

company between the time of the accident and the time of application. It furnished the bond as requested, for compensation, taking from Alexander an indemnity agreement with which was deposited forty-five shares of the cycle company stock as security for its performance. The judgment against Alexander was affirmed by this court on May 8, 1916 (*Maskell v. Alexander,* 91 Wash. 363, 157 Pac. 872), and judgment was rendered thereon against the fidelity company as surety on the supersedeas bond. When the remittitur went down, the fidelity company paid over to Maskell the amount of the judgment, interest, costs and accrued costs, and received from him an assignment of the judgment.

On September 18, 1916, the cycle company executed to the respondent Wilson a common law assignment of all its property for the benefit of all of its creditors, and shortly thereafter he took possession of the property and has since managed it for the benefit of the creditors. At the time the transfer of the business was made by Alexander to the corporation organized by him, he was solvent. There was no intent on his part to defraud any one, the corporation having been formed by him in good faith as a business proposition. In making the transfer, the bulk sales act was utterly ignored, and no affidavit or statement as required by it was made by Alexander or required by the corporation. Of the 750 shares of cycle company stock issued and delivered to Alexander, the appellant still had the forty-five shares which Alexander had pledged to it to indemnify it for becoming surety on the supersedeas bond, and 703 shares of the stock in the hands of Alexander were pledged to one Crandall to secure an indebtedness of about $750 owed by Alexander to Crandall. The value of the assets of the cycle company at the time of the trial was $28,961.49 more than the amount of its liabilities.

Judgment was entered on the stipulated facts that the 703 shares of stock pledged to Crandall were subject to the judgment assigned to appellant, and they were ordered sold in satisfaction of the judgment, subject to Crandall's claim. Other relief was denied appellant, the theory of the court being that the transfer of the stock of goods in bulk to the corporation organized by Alexander was not a sale within the meaning of the bulk sales law.

The bulk sales law, so called, provides:

"Whenever a person shall bargain for, or purchase any stock of goods, wares or merchandise in bulk, for cash, or on credit, and shall pay any part of the purchase price, or execute or deliver to the vendor thereof, or to his order, or to any person for his use, any promissory note, or other evidence of indebtedness for said purchase price, or any part thereof, without first having demanded and received from said vendor, or from his agent, the statement provided for in section 5296 and verified as there provided, and without paying, or seeing to it that the purchase money of the said property is applied to the payment of the *bona fide* claim of the creditors of the vendor as shown upon such verified statement, share and share alike, such sale or transfer shall be fraudulent and void." Rem. Code, § 5297.

Section 5296, preceding, provides that:

"It shall be the duty of every person who shall bargain for, or purchase any stock of goods, wares or merchandise in bulk, for cash, or on credit, before paying to the vendor, or his agent, or representative, or delivering to the vendor, or his agent, any part of the purchase price thereof, or any promissory note, or other evidence therefor, to demand of and receive from such vendor, or agent, . . . a written statement, sworn to substantially as hereinafter provided, of the names and addresses of all the creditors of said vendor, to whom said vendor may be indebted, together with the amount of the indebtedness due or owing, and

to become due or owing, by said vendor to each of such creditors; and it shall be the duty of said vendor, or agent, to furnish such statement, which shall be verified by an oath,'' (then giving the form of the oath).

We shall not follow counsel over the extended field of discussion as to whether or not Maskell, at the time of the transaction involved, was the creditor of Alexander within the meaning of the bulk sales law, for the reason that we are of the opinion, as was the court below, that the transfer was not a sale within the bulk sales law.

The statute uses the words "cash" and "credit" in regulating such transfers as contradistinguished from each other. The common meaning of the word "cash" is "money." 1 Words & Phrases, 995.

We have held that the object of the bulk sales law was to prevent the vendor, usually a retail merchant, from selling his stock of goods, pocketing the proceeds, and leaving his creditors remediless (*McAvoy v. Jennings,* 44 Wash. 79, 87 Pac. 53; *Kasper v. Spokane Merchants Ass'n,* 87 Wash. 447, 151 Pac. 800); and in the latter case, that no such result followed where the property was so disposed of as to make it available to the creditors; and hence, the reason for the rule failing, the rule itself failed.

We certainly would not hold that a creditor was remediless where a merchant transferred his stock of merchandise in bulk to another for an adequate exchange of real estate; for the real estate would be as available to the creditors as the stock of goods. While we might be disposed, in upholding the objects of the act, to consider commercial paper, bonds, warrants, and other securities as the equivalent of cash, because of their easy disposition and convertibility into cash for the protection of creditors, such a case is not analogous to that here.

Where no fraudulent intent taints the transaction, a debtor may transfer his property to a corporation which he has formed, in consideration of the issuance to him of its capital stock, and of that his creditors cannot complain. The corporate stock is as available for the satisfaction of the claim of creditors after the transfer of the merchandise as the merchandise was before.

"There was nothing illegal or improper in the formation of the plaintiff company, nor in the transfer to it by Holt & Chipman of the property in question. At the time the company was formed, that firm appeared to have been solvent, and there is nothing to show that it was intended as a fraud upon their present or future creditors. It was not a withdrawal of their property from the grasp of creditors. On the contrary, it remained subject to their claims, though in a changed form. The interest of the partners in the corporation was represented by stock. This stock was as much liable to the demands of the creditors as was the property itself before the formation of the company." *Coaldale Coal Co. v. National State Bank of Camden,* 142 Pa. St. 288, 21 Atl. 811.

See, also, *Plaut v. Billings-Drew Co.,* 127 Mich. 11, 86 N. W. 399; *Kingman & Co. v. Mowry,* 182 Ill. 256, 55 N. E. 330, 74 Am. St. 169; *Densmore Commission Co. v. Shong,* 98 Wis. 380, 74 N. W. 114.

We will not, of course, countenance a mere transmutation of the business of individuals into a corporate business and a fraudulent manipulation of its stock in such a way as to deprive the creditors of any remedy against the individual debtors. But, as we view the present case, appellant has little or nothing of which to complain. It is not hurt. It has almost the entire capital stock in its possession and control, subject to some slight indebtedness, with a large margin of assets over the liabilities apparently amply suf-

ficient, if properly administered, to satisfy appellant's indebtedness. Consequently, as to the particular case before us, we might say that appellant's right is limited to the satisfaction of its claim. It does not extend to enforcing its satisfaction out of some particular property of the debtor or by some particular means.

The judgment below was right and is affirmed.

Ellis, C. J., Chadwick, Mount, and Morris, JJ., concur.