[No. 15189.   Department Two.   June 30, 1919.]

F. A. BEELER *et al., Respondents,* v. STANDARD
INVESTMENT COMPANY *et al., Appellants.*[1]

CORPORATIONS (218) — RECEIVERS — GROUNDS — EVIDENCE — SUFFI-
CIENCY.   A receiver for a corporation operating a large dairy .farm
should not be appointed upon the ground of the incompetence and
mismanagement of the manager and failure to keep proper accounts
and make monthly statements, where it appeared conclusively that,
although a young man, he was thoroughly qualified, had conducted
it in a businesslike manner, making profits of $9,000 more than in
any previous year, and all necessary accounts were properly. kept,
the books were open to inspection, and a system of monthly state-
ments would entail much labor.

SAME (218)—RECEIVERS (3)—GROUNDS—DISCRETION.   While Rem.
Code, § 741,. gives wide discretion to the superior court to appoint
receivers, it was not intended to authorize a receiver for a solvent
corporation merely because the minority were dissatisfied with the
majority, conducting the corporation in good faith.

Appeal from a judgment of the superior court for
King county, Smith, J., entered September 14, 1918,
in favor of the plaintiffs, in an action for equitable
relief, tried to the court. Reversed.

*W. H. Beatty* and *James B. Murphy,* for appellants.

*Geo. B. Cole* and *John Wesley Dolby,* for respond-
ents.

MOUNT, J.—This action was brought by a minority
of the stockholders of the Standard Investment Com-
pany, a corporation, for the appointment of a receiver,
for an accounting by the trustees, and to wind up the
affairs of the corporation and distribute the property
among the stockholders.

Generally and briefly stated, the complaint charged
that the board of trustees was dominated by James
Campbell; the president of the corporation; that Lee

[1] Reported in 181 Pac. 896.

Oien, the manager of the business of the corporation, was inefficient, extravagant and incompetent; that the property was not properly managed and was permitted to deteriorate; that the manager had not accounted for all the proceeds of sales, had made unreasonably poor sales of property and had refused to give the minority stockholders a statement of the affairs of the corporation; and alleged that, unless a receiver was appointed, the property would be wasted and irreparable injury done to the plaintiffs. The answer denied generally all the allegations of the complaint. The case was tried to the court without a jury, and resulted in a judgment appointing a receiver to take charge of the property of the corporation and to sell the same and divide the proceeds among the stockholders according to their respective interests. The defendants have appealed from that judgment.

The appellants make three contentions in this court:

First, that the court erred in appointing a receiver, because all the stockholders were not made parties to the action; second, that the court arbitrarily refused to receive certain evidence offered by the appellants; and third, that there was no cause for the appointment of a receiver.

There is merit in all three of these contentions, but, in view of our conclusion that there was no real cause for the appointment of a receiver, the first two points will not be considered.

It appears that, several years prior to the time of the institution of this suit, the Standard Investment Company was organized as a corporation, with a capital stock of $10,000, divided into 1,000 shares of $10 each. The principal property owned by the corporation is a dairy farm located near Thomas, in King county. This farm consists of about 500 acres of land. It is stocked with a herd of dairy cattle and

other farm stock, tools and equipment. At the time of the trial, the farm was worth more than $200,000. It was subject to a mortgage indebtedness of $50,000 and some other minor indebtedness. At the trial of the case, the principal points contended for by the respondents to show that a receiver should be appointed were that Lee Oien, the business manager of the corporation, in charge of the dairy farm, was incompetent; that he had failed to keep a proper system of accounts, sold property of the farm without accounting therefor, mismanaged the farm by letting it grow to weeds, and neglected to keep up the fences and make proper drainage; that the trustees had refused to furnish a monthly statement to each of the stockholders; had refused to discharge the manager when requested to do so; and that, by reason of extravagant management, the trustees had declared no dividends.

At the conclusion of the trial, the court made no findings of fact, but filed a written opinion, in which he found that the manager in charge of the farm, on account of his youth, was not qualified to manage the farm and that he had not kept proper accounts; that the minority stockholders had not been treated fairly, and that a division of the farm and the property belonging thereto was necessary to secure ample justice to all the parties; and, apparently for that reason, appointed a receiver. The evidence is very voluminous. The abstract of the record alone comprises more than four hundred pages. The writer of this opinion has carefully examined the abstract of the evidence and the court is satisfied therefrom that whatever evidence the respondents offered in support of their general allegations was entirely overcome by the testimony on behalf of the appellants. The manager of the farm selected by the majority stockholders

was a young man, twenty years of age. That fact seemed to control the lower court. The evidence shows conclusively that, while Mr. Lee Oien, the manager, was a young man, he had lived on this particular farm from his early life, when his father was manager thereof, and that he was thoroughly qualified to take care of the farm, and had conducted it in a business-like manner. The evidence is conclusive that, under his management, the profits of the farm for the year prior to the trial amounted to $19,000, or $9,000 more than for any previous year. The evidence also conclusively shows that his system of accounts was amply sufficient; that the farm was kept up on an average as good as or better than the majority of the farms in that neighborhood. The effort to show that he had not been honest in his accounts was entirely overcome. There was an endeavor on the part of the respondents to show that the milk and the cows were kept in a filthy condition, but that evidence was entirely overcome by the evidence on the part of the defense. We find no justification in the record for any finding that the management of the farm by Lee Oien was detrimental to any of the stockholders. It is true, upon several occasions he had furnished milk and some vegetables of no special importance to one or two of the stockholders. One of these stockholders was the secretary and treasurer of the corporation, who had served for years without pay; and when he had driven from Seattle down to the farm, he had, upon several occasions, obtained some of the produce of the farm which was not accounted for. But this clearly could not be regarded as mismanagement or incompetency on the part of the manager. It was contended by the respondents that the trustees were dominated by the president of the corporation. If this is so, there was no evidence of a wrongful domination. He and the

other trustees were elected by a vote of a majority of the stock and were thereby authorized to control the affairs of the corporation according to their best judg-ment; and when they do this they do their full duty, notwithstanding the fact that the minority stock-holders do not agree to their policy. There was no evidence of fraud or unfair treatment of the minority stockholders.

Much evidence was introduced upon the trial to the effect that the fences were not properly kept up and that a drainage system should be installed; but we think, when the appellants' testimony was considered, it is plain that no criticism should be made against the trustees or the manager on account of the fences. It was shown that a drainage system upon this farm would be expensive. Some of the witnesses testified that it would cost about $30 per acre, and the evidence on the part of the appellants shows that an effort had been made to establish a drainage district in that sec-tion of the country so as to include other farms beside this; and this being so, it was a question of policy with the trustees whether they should put in an independent expensive drainage system or not. The evidence shows that it was the desire of the governing trustees, who were all stockholders, that the debt should be paid, rather than that dividends be declared or extensive improvements made upon the farm. This was a ques-tion of policy which was within the discretion of the governing trustees, and we are satisfied no serious criticism could be offered because an expensive drain-age system was not installed. There was some evi-dence on the part of the respondents to the effect that the ditches and drains on the place were allowed to become stopped up and clogged. The evidence on the part of the appellants shows that these ditches and drains were cared for each year properly, and we are

satisfied that no criticism should be made by the minority stockholders upon this account.

The respondents argue that, under Rem. Code, § 741, relating to the appointment of receivers, the court is authorized to appoint a receiver, "when, in the discretion of the court, it may be necessary to secure ample justice to the parties: . . ." This section gives to the court wide discretion in matters of that kind, but it was clearly never intended that, where a corporation is a solvent, going concern, a minority of the stockholders may have the corporation dissolved and its affairs wound up simply because they are not satisfied with the way the majority is conducting the corporation, especially when the majority is acting in good faith and exercising their best judgment. No contention is made in this case that the corporation is insolvent. It is plain from the evidence that, when the corporation was formed, the value of the property was $10,000, the par value of the stock. It is now worth at least, according to the testimony, $200,000, encumbered by a mortgage of $50,000. So it is apparent that the stock, which a few years ago was worth but $10 a share, is now—if the figures given upon the trial are correct—worth $100 or $150 a share. The net profits of the corporation for the last year were more than $19,000; so there can be no reasonable claim that the corporation is insolvent or liable to become so. We said, in *Secord v. Wheeler Gold Min. Co.,* 53 Wash. 620, 102 Pac. 654, at page 625:

"The policy of the corporation, if honestly conducted, must be controlled by the majority of the stockholders. Mistakes, inadvertence, or bad policy, if honestly pursued, will not warrant the appointment of a receiver."

That must rule this case. The respondents rely upon the case of *Boothe v. Summit Coal Min. Co.,* 55

Wash. 167, 104 Pac. 207. That was a case where the stock in a corporation was held equally by two persons who could neither agree nor elect officers. One set of officers, by reason of a failure of election, claimed to hold over. These officers were not honestly conducting the corporation, because of extravagant management and increased salaries paid to one of the stockholders. In that case, we said, at page 177: "After a most diligent research we have been unable to find any case similar to this. It is *sui generis.*" Upon the facts in that case, we concluded that it was within the discretion of the court whether a receiver should be appointed, and that a receiver was necessary to secure ample justice to the parties; but that case is far different from this. In this case, two-thirds of the stockholders are satisfied with the management of the farm. So far as the record shows, they are conducting the farm at a profit. They are exercising their honest judgment in the management of the affairs of the corporation; and it is apparent, therefore, that no receiver should be appointed. The respondents insisted in the trial below that a monthly statement should be furnished to each of the stockholders and that this had been refused by the trustees. It was shown that this monthly statement would entail upon the manager of the farm and upon the secretary of the corporation much labor; that the secretary of the corporation was acting, as were the other trustees except the manager, without salary, and that they had devoted their time to the affairs of the company without remuneration. The evidence on the part of the appellants showed, also, that the books of the corporation were open at all times to the minority stockholders; that they were at liberty, not only to inquire of the secretary and treasurer what the books showed, but they were at liberty to inquire of the manager at

any time the condition of the accounts or the business of the farm; that, for the year prior to the trial, the manager of the farm had kept a diary of everything upon the farm; that the pay rolls and everything of that nature were open to inspection of the minority stockholders.

From every angle of the case, we are satisfied that the trial court was not authorized under the facts to appoint a receiver or to wind up the affairs of this solvent, going company.

The judgment appealed from is therefore reversed and the cause ordered dismissed.

HOLCOMB, C. J., FULLERTON, and PARKER, JJ., concur.