[No. 18851. Department Two. May 12, 1925.]

WILLIAM G. NORRIS, *Respondent,* v. ADOLPH ANDERSON
*et al., Defendants,* SEATTLE MERCHANTS'
ASSOCIATION, *Appellant.*[1]

FRAUDULENT CONVEYANCES (14, 48)—PROPERTY SUBJECT—SALES IN BULK—VALIDITY OF TRANSACTION BETWEEN PARTIES. Since title to a stock of goods in bulk passes by a sale, notwithstanding failure to give a list of the creditors, as required by the sales in bulk act, Rem. Comp. Stat., § 5832 (which gives no specific lien to creditors), a common law assignee for the benefit of creditors without compliance with the statute, takes title in trust for creditors, precluding an action by a creditor for the appointment of a receiver.

RECEIVERS (11)—APPOINTMENT—DEFENSES—OTHER REMEDY. Upon an assignment of a stock of goods in bulk to a common law assignee for the benefit of creditors, without compliance with the sales in bulk act, Rem. Comp. Stat., § 5832, making the vendee liable for the debt but giving no specific lien on the property, creditors have an adequate remedy at law against the debtor as well as the assignee, and are accordingly not entitled to the appointment of a receiver to conserve the assets (TOLMAN, C. J., dissenting).

Appeal from an order of the superior court for King county, French, J., entered April 17, 1924, appointing a receiver. Reversed.

*S. G. Climenson* and *Roberts & Skeel,* for appellant.
*Richard E. Morris,* for respondent.

MITCHELL, J.—On September 27, 1921, Adolph Anderson, a grocer in the city of Seattle, executed and delivered his demand promissory note in the sum of $1,000 to William G. Norris. It appears that the money was used by Anderson in the purchase of, or in connection with, his grocery business. On September 14, 1923, Anderson sold and delivered his business, consisting of merchandise and fixtures, to H. K. Solberg and William Hagen, executing his duly acknowl-

[1]Reported in 235 Pac. 966.

edged bill of sale therefor, to which was attached a verified list of his creditors and the amount due each of them, including the Norris claim, as provided for in the bulk sales law, Rem. Comp. Stat. § 5832. In the bill of sale, the vendees, who signed the instrument, agreed to pay the creditors of Anderson. At or about that time, and in consideration of the extension of time given by Norris for the payment of the note due him, Solberg and Hagen endorsed and guaranteed the payment of the note.

Early in the year 1923, Solberg and Hagen had incorporated the United Pacific Stores, the object of which was to purchase and conduct a chain of stores in Seattle. They were the only officers of the corporation. Upon purchasing the Anderson business, it was thereafter conducted in the name of United Pacific Stores. New goods were purchased in that name and paid for, in part at least. In that name, a large amount was paid to creditors of Anderson, other than Norris. Norris claims that he had no knowledge that the business was being conducted in the name of anyone other than Solberg and Hagen. Solberg and Hagen testified by affidavit that they purchased from Anderson for and on behalf of the United Pacific Stores, the corporation they had organized. There was no transfer of the business from Solberg and Hanson to the United Pacific Stores by any written instrument. The affairs of the United Pacific Stores getting into financial straits, on March 26, 1924, it made a common law assignment for the benefit of all its creditors to the Seattle Merchants' Association, a non-profit corporation engaged in the business of winding up insolvent estates for the benefit of creditors.

This action was commenced by Norris on March 29, 1924, three days after the assignment to the Seattle Merchants' Association, to recover judgment against

Anderson, Solberg and Hagen for the amount then due on the promissory note. It was alleged that the United Pacific Stores and the Seattle Merchants' Association claimed some interest in the grocery business inferior to the claims of the plaintiff; that the business was being conducted by Solberg and Hagen, whom it was alleged had insufficient assets to pay their obligations, and that it was necessary to have a receiver appointed to prevent loss and a dissipation of the assets. A receiver was asked for, and on the hearing of a show cause order, April 17, 1924, a receiver was appointed over the objections of the Seattle Merchants' Association. Between the dates of the order to show cause and of the order appointing a receiver, Solberg and Hagen conveyed to the Seattle Merchants' Association, as assignee for the benefit of creditors, all their interest in the grocery business and fixtures ''for the purpose of completing the said chain of title to the property,'' they having acted in the purchase of the property from Anderson as agents of the United Pacific Stores which, therefore, was the real owner and the one that conducted the business until the assignment to the Seattle Merchants' Association.

The receiver was appointed to take charge of the grocery business as belonging to Solberg and Hagen on account of their insolvency. It is recited in the order that, without consideration, they transferred their assets, after the commencement of the action, to the Seattle Merchants' Association; and it is further stated in the order that it appears to the court that the plaintiff has a special interest in the stock of goods, wares and merchandise and fixtures of the business and that, unless a receiver be appointed, the plaintiff's rights will be impaired. The Seattle Merchants' Association has appealed.

Reliance is had by the respondent upon the bulk sales law, § 5832, Rem. Comp. Stat. [P. C. § 7749]. It is argued that, after the sale by Anderson, there was a failure to comply with the law in that there was no verified list of creditors in the conveyance or assignment by Solberg and Hagen or by the United Pacific Stores, and that, therefore, the respondent as a creditor had a special interest in the stock and fixtures that authorized the appointment of a receiver. The trial court adopted the same view, so stating in the order appointing the receiver. In this we think there was error.

There can be no doubt that the appellant was the owner of the merchandise and fixtures, as between it and the vendors, at the time this action was commenced because of the assignment to it made by the United Pacific Stores. For that purpose, it was immaterial that Solberg and Hagen, who, on the face of the papers, purchased from Anderson, had not themselves conveyed to the United Pacific Stores. Solberg and Hagen were the United Pacific Stores, being the only stockholders and officers, and it was they who signed in the name of the United Pacific Stores the assignment to the appellant and who, in ratification of that act, if ratification were necessary, thereafter made a personal conveyance to the appellant.

*Kasper v. Spokane Merchants' Association,* 87 Wash. 447, 151 Pac. 800, is in point. In that case the plaintiff was a simple contract creditor of Hannah R. Cohn, the owner of a mercantile business. She transferred the business to a corporation without complying with the terms of the bulk sales law. The corporation, because of failing circumstances, later made a common law assignment to the Spokane Merchants' Association. In discussing the effect of that assignment, under the bulk sales law, it was said:

"Hence, it follows that, as between the vendor and vendee, title will pass to the property by a sale in bulk, notwithstanding a want of compliance with the statutory requirements. Again, it will be observed that the act does not purport to vest title in the creditors of the vendor to property so conveyed, nor does it give such creditors a specific lien upon such property; the transfer is simply, as to them, conclusively established by the statute to be fraudulent and void. Their right in the premise and remedy for the wrong are not, therefore, different from the right and remedy of any other creditor whose debtor has disposed of his property in fraud of his creditors; they may pursue the property in the hands of the wrongdoers or in the hands of those who take it with knowledge of the wrong; or, in the alternative, may pursue the wrongdoers personally as for a conversion of the property."

Nor does the fact that, in the *Kasper* case, the assignment to the Spokane Merchants' Association contained a list of creditors of the vendor, detract from that case as authority in the present one, because, as stated therein,

"We held in *McAvoy v. Jennings,* 44 Wash. 79, 87 Pac. 53, that a common law assignment by a failing debtor of his stock of merchandise for the benefit of his creditors, or such of them as would comply with certain specified conditions, was not a sale within the meaning of the sales-in-bulk law; that the object of the sales-in-bulk law 'was to prevent the vendor, generally a retail merchant, from escaping his responsibilities to his creditors by disposing of all his stock, pocketing the proceeds, and leaving his creditors without redress,' and that no such result followed where the property was so disposed of as to make it available to the creditors, and hence the reason for the rule failing, the rule itself failed."

Also, see *Maskell v. Spokane Cycle & Auto Supply Co.,* 100 Wash. 16, 170 Pac. 350, L. R. A. 1918C 920.

In the case of *Grays Harbor Commercial Co. v. Fifer,* 97 Wash. 380, 166 Pac. 770, we said:

"A receiver will not be appointed if garnishment, execution, and attachment will enable the creditor to reach the property sought." (Citing cases.)

We know of no reason, nor is any suggested by the respondent, to prevent the enforcement of any right the respondent may have as a creditor of Solberg and Hagen against the appellant who had taken title to the property for the benefit of all creditors, prior to the commencement of this action, by an action at law if necessary. The appellant, as an assignee for the benefit of creditors, is equally amenable to such an action as though it were a purchaser under the bulk sales law, of whom it was said, in *Kohn v. Fishback,* 36 Wash. 69, 78 Pac. 199, 104 Am. St. 941 [syllabus]:

"One who buys a stock of merchandise in bulk, without complying with the statute requiring him to demand a list of the vendor's creditors and to see that the purchase price is applied to their payment, holds the property in trust for such creditors, and is liable to them in an action of garnishment, although he is not indebted to the vendor and has disposed of the goods."

Also, see *Friedman v. Branner,* 72 Wash. 338, 130 Pac. 360.

There can be no serious question, under the proof in this case, that the United Pacific Stores had possession of the goods, and were doing business in that name by and through its only officers Solberg and Hagen at the time of the common law assignment to the appellant, and that thereby the legal title, as between vendor and vendee, was conveyed to the appellant, the vendee. If, by that transfer or the secret or any other understanding by which Solberg and Hagen transferred to or took the property for the United Pacific

Stores upon purchasing it from Anderson, there has been any transgression of the rights of the respondent as a creditor of Solberg and Hagen, those rights are enforcible in an action at law, and hence a receiver should not have been appointed. *Grays Harbor Commercial Co. v. Fifer, supra*; *Millar & Co. v. Plass,* 11 Wash. 237, 39 Pac. 956.

In the case of *Bergman Clay Mfg. Co. v. Bergman,* 73 Wash. 144, 131 Pac. 485, it was stated that the first rule confronting a chancellor upon an application to appoint a receiver is that the power to do so is a delicate one which should always be exercised with caution; "and the second is that a receiver should not be appointed if there is any other adequate remedy."

In our opinion, the appointment of a receiver in this case was unauthorized. The order is reversed.

FULLERTON, HOLCOMB, and MACKINTOSH, JJ., concur.

TOLMAN, C. J. (dissenting)—In my opinion respondent's rights under the conditions shown by the record could not be protected and enforced by any action at law and equity should intervene to protect them. I therefore dissent.