[No. 26485.  Department Two.  April 22, 1937.]

MARTHA BLINN *et al., Appellants,* v. ALMIRA TRADING COMPANY, *Respondent,* JULIUS C. JOHNSON *et al., Interveners and Respondents.*[1]

*Houghton & Cluck,* for appellants.

*Pettijohn & McCallum,* for respondents.

HOLCOMB, J.—On petition of appellants, a temporary receiver was appointed by the trial court and an order

[1] Reported in 66 P. (2d) 1132.

made returnable on a certain day to show cause why such appointment should not be made permanent *pendente lite*. On the return day, a hearing was had, both on oral and documentary evidence, amounting virtually to a trial on the merits. The only question, then, to be decided was whether or not the receivership should be continued *pendente lite*. The appointment of a temporary receiver was denied.

In 1914, Blinn & Howard and J. C. Keller, general merchants, and the Central Washington Warehouse Company, a grain merchant, consolidated and formed the Almira Trading Company, which will be referred to as the Trading Company, one of respondents here. Seven hundred thirty shares of stock were issued to a par value of $73,000, and the only inference to be drawn from the testimony is that the capital was not paid in cash, but was made up of the merchandise and other assets of the three concerns which consolidated.

In 1921, the Trading Company discontinued its general merchandise business and has engaged, since then, in the warehouse and grain business and selling feed and fuel. An audit, made by appellants' accountants just before the commencement of this action, showed a net value of $50,862.56. In this audit, in addition to charge-offs which the manager of the Trading Company had made, the accountants set up reserve of $12,231.57 as against notes and accounts on the theory that some of these might not be collectible and took no account of $2,334.37 of accrued interest on bills receivable. There is no proof to show that the notes and accounts not charged off are not collectible. The net value of the corporation would therefore be $65,428.50. When it is considered that the capital of $73,000 was made up of assets of the three concerns and that $11,379.76 has been charged off on account of depreciation, it is apparent that no capital losses have

been sustained by reason of the business or the management of the Trading Company.

In 1935, because of keen competition, the Trading Company had to pay three cents per bushel more for wheat in that locality than the market justified, with the result that the gross profits on its sales for the fiscal year ending May 31, 1936, amounted to only $2,032.85. After the operating expenses of the year were considered, there was a net loss of $6,575.99. Upon that disclosure, the directors and stockholders leased the warehouses to the Sperry Flour Mills for one year.

Practically all of the stock of the Trading Company has been owned by appellants and interveners at all times since its incorporation and all the stockholders have been in close touch with the management of its affairs.

On June 24, 1936, at a meeting of the stockholders, it was resolved that the Trading Company cease operating the warehouse, and on July 10, 1936, with appellant Peterson present, a resolution was adopted that they try to sell the warehouses for $20,000.

Prior to July 17, 1936, there had been no discord among stockholders and no one had charged another with fraud, bad faith or bad management. On this date, appellant Mrs. Blinn, represented by one Carstensen, offered to take over the warehouse property and town lands with buildings at $20,000, surrendering two hundred fifty shares of stock for cancellation at $14,000 and paying $6,000 in cash, which was not favored by the stockholders though no formal action was taken. This proposition not being accepted, the present action was instituted.

The complaint charges that respondent Johnson, who is president of the Trading Company and also president of the Almira State Bank, has been guilty

of manipulating the affairs of the company so as to inure to the benefit of the bank; and that the business of the company has been grossly mismanaged. Respondent Trading Company answered the complaint, admitting an allegation that the total indebtedness owing to the company is approximately $25,089.69; that Cubbage is indebted to it in the sum of $1,388.42; that it has paid dividends as alleged in the complaint; and that the company is indebted in the approximate sum of $6,000. All other allegations of the complaint were denied.

At the trial, intervener Julius C. Johnson and his associates, who had been managing the affairs of the Trading Company prior to the appointment of the temporary receiver, were granted leave to intervene and answer the complaint. Their answer is substantially the same as that of the Trading Company, except that they alleged affirmatively that the officers of the Trading Company were competent, had acted in good faith, and that they could attend to the affairs of the company to a better advantage than could the receiver, and that the Trading Company was able to pay its current obligations.

The affirmative allegations were denied by a reply of appellants. At the close of the evidence for appellants, all respondents joined in a motion to dismiss the action with prejudice and with costs against appellants; and that the temporary receiver be discharged on the grounds that the complaint does not state facts sufficient to constitute a cause of action and that the proof offered by appellants had wholly failed to show any cause of action for the appointment of a receiver.

Among other things, appellants sought to prove that the managing of the corporation had been chiefly for the interests of the Almira State Bank rather than for the interests of the Trading Company. Respondents

Johnson, Nansen and R. H. Stephens are directors of the bank and also directors of the Trading Company. Appellant Martha Blinn and respondent Lyle Cubbage are the other two directors of the Trading Company.

It is asserted that in many cases the bank and the Trading Company dealt with and extended credit to the same customers, and that the bank directors saw to it that the bank had security and pressed its collections, while the Trading Company had no security and its collections were not pressed.

After the trial, the judge filed a memorandum opinion which, among other things, stated that the Trading Company was then admittedly solvent, which is correct. He also said:

"There is no evidence of the refusal of access of the stockholders to the books of the corporation, there is nothing to show that any officer of the company is paying himself any salary. There is no evidence of any deadlock among the stockholders of the corporation, paralyzing its business, neither is there any encouragement of a rival firm by the officers or stockholders, nor has any officer or stockholder at any time been dealing with the corporation except the manager Cubbage, who drew a salary known to all the parties interested. No payment of money has been paid except to parties entitled thereto. There has been no failure on the part of the stockholders to divulge to any person concerned facts concerning the defendant's management. There has been no dealing in bad faith unless it would be the fact that the bank is willfully operating to its own advantage and against the interests of the defendant corporation.

"I may, at this time, state that I can not find from the evidence that the bank has acted oppressively toward the defendant corporation. It is true that defendant was not as diligent in obtaining security for the money it loaned and not as diligent in collecting the same as was the bank, but defendant had local competition and the bank did not. The evidence disclosed by the lists of notes and accounts receivable

that while a number of common debtors existed, there was no evidence of any fraudulent overreaching by the common officers of the bank and defendants.

"Since in my judgment there is no evidence of fraud, oppression, inequitable conduct or other illegal acts in the management of the defendant corporation either on the part of the majority stock or its holders or its officers, I will hold that the application for a receiver pendente lite should be denied."

The interveners took, and still take, the position in this case that just before the commencement of this action it was unanimously agreed by the stockholders that the Trading Company should not actively engage in the grain business in the season of 1936 and that it should proceed to collect its notes and accounts receivable and sell the warehouse. Finding no purchaser, the property was leased for one year. They declared that the officers of the company can make collections with more efficiency and with less expense than through a receiver; that in the absence of fraud and injustice, it is not within the province of the court to meddle with or attempt to supervise private business and this company can, within itself, wind up its affairs and distribute its property in the manner prescribed by statute and thus save expense and procure more for its property. With the above contentions of the intervener-respondents, we agree.

Appellants first argue that the court may appoint a liquidating receiver of a corporation when its objects have wholly failed or are entirely abandoned, or their accomplishment rendered impracticable. *Draper v. Robinson Lettuce Farms,* 164 Wash. 8, 2 P. (2d) 661, construing Rem. Rev. Stat., § 741 [P. C. § 8414], is relied upon, but none of those features exist in this case.

The corporation has not yet ceased to exist; the

purpose of its organization is not impossible of attainment; nor has it abandoned its business. The uniform business corporations act, Rem. Rev. Stat., (Sup.), § 3803-50 [P. C. § 4592-80], is no more mandatory than the former statute. The language still reads:

"The court *may*, upon petition being filed, entertain proceedings," etc. (Italics ours.)

No proceedings have been instituted under the voluntary dissolution provisions of the new corporations act. Rem. Rev. Stat. (Sup.), §§ 3803-48, 3803-49 and 3803-50 [P. C. §§ 4592-78, 4592-79, 4592-80], among other things, provide that there may be voluntary dissolution of a corporation

" . . . Whenever a resolution therefor is adopted by the holders of at least two-thirds of the voting power of all shareholders at a shareholders' meeting duly called for that purpose . . . "

and so initiate such voluntary proceedings. Hence, it is unnecessary to go further into the new act, Rem. Rev. Stat. (Sup.), § 3803-48 [P. C. § 4592-78], *et seq.*, *supra*, because there is nothing as yet before us under that act.

The appointment of a receiver is a harsh and extraordinary remedy and will be resorted to by the courts only in extreme cases. *Smith v. Brown,* 50 Wash. 240, 96 Pac. 1077; *Frost v. Puget Sound Realty Associates,* 57 Wash. 629, 107 Pac. 1029; *Bergman Clay Mfg. Co. v. Bergman,* 73 Wash. 144, 131 Pac. 485; *Kahan v. Alaska Junk Co.,* 111 Wash. 39, 189 Pac. 262, 10 A. L. R. 151; *Norris v. Anderson,* 134 Wash. 403, 235 Pac. 966; *Gahagan v. Wisner,* 139 Wash. 664, 247 Pac. 965; *Forquer v. Inland Finance Co.,* 142 Wash. 688, 253 Pac. 1086.

Under the above cases, the stockholders must first exhaust their remedies within the corporation before resorting to the extraordinary remedy of receivership.

■ The policy of the corporation, if honestly conducted, must be controlled by a majority of the stockholders. Mistakes, inadvertence, or bad policy, if honestly pursued will not warrant the appointment of a receiver. *Secord v. Wheeler Gold Mining Co.,* 53 Wash. 620, 102 Pac. 654; *Beeler v. Standard Inv. Co.,* 107 Wash. 442, 181 Pac. 896, 5 A. L. R. 363; *Forquer v. Inland Finance Co., supra.*

In the last cited case the dismissal of an action for the appointment of a receiver, tried on the merits to the court, was affirmed as a proper exercise of discretion. In some of our cited cases, appointments of receivers under circumstances similar to those in this case were reversed.

We need not examine outside cases because this case is controlled on its facts, by our own statutes and decisions. The trial court exercised a sound discretion in denying the appointment of a receiver and dismissing the petition.

■ In one respect, however, we believe that the order of dismissal should be modified as to eliminate the words "with prejudice." Such a judgment would not affect or limit appellants in any future application for a receiver to facts which might occur subsequent to the entry of the judgment herein.

As so modified the judgment will be affirmed. This is not a very substantial change and respondents will recover all costs both below and here.

STEINERT, C. J., BEALS, TOLMAN, and ROBINSON, JJ., concur.