THE STATE BANK OF CHASE, ETC., v. FANNIE CHATTEN.

No. 13,549.   (77 Pac. 96.)

SYLLABUS BY THE COURT.

1. FRAUDULENT CONVEYANCE—*Burden of Proof upon Subsequent Creditor.* A creditor whose claim originated after the making of a conveyance which he attacks as fraudulent has the burden of proving actual fraud before he can derive a benefit from section 7881 of the General Statutes of 1901, which provides that a trust shall result in favor of creditors when a conveyance is fraudulently made to one person upon a consideration paid by another.

2. ——— *Subsequent Creditor, with Notice, Estopped.* A subsequent creditor who, at the time he extended credit, knew that a deed has been made to a third person upon payment of the consideration by his debtor cannot attack such conveyance as fraudulent.

3. ——— *Facts Stated, and Bank Held a "Subsequent Creditor."* A debtor paid the consideration for a deed of real estate made to his wife. Afterward a creditor sued him and caused garnishment process to be issued and served. Thereupon, the defendant disputing the amount demanded, an adjustment was had and an agreement made to settle the claim for a less amount; payments were to be made at intervals in the future, for which certain security was to be given, and the garnishment action was to be dismissed. Notes for the payments were given and accepted and the action was dismissed, in pursuance of the agreement. The new notes not being paid at maturity they were placed in judgment, which the plaintiff sought to have declared a charge upon the real estate. *Held*, that he should have been considered a "subsequent creditor." (*Lanphear v. Ketcham*, 53 Kan. 799, 37 Pac. 119.)

Error from Rice district court; ANSEL R. CLARK, judge. Opionion filed June 11, 1904. Affirmed.

*Adams & Adams, Samuel Jones,* and *C. F. Foley,* for plaintiff in error.

*C. W. Burch,* and *O. E. Hopkins,* for defendant in error.

The opinion of the court was delivered by

MASON, J. : The State Bank of Chase brought an action against Fannie Chatten, seeking to subject real estate standing in her name to the payment of a judgment against her husband, E. L. Chatten. The bank was denied relief, and brings this proceeding to review the judgment.

The facts found by the trial court, so far as necessary to exhibit the disputed questions of law, were as follows : In 1891 E. L. Chatten owed the bank $5196, due not later than June of that year. On January 11, 1892, the real estate here involved was bought at a sheriff's sale by E. L. Chatten in the name of his wife, he paying the consideration, $3375, by a check drawn on another bank. Soon after this the cashier of the State Bank of Chase had information that such a check had been given by Chatten for the land, and expressed surprise that he had that amount with which to pay for it. A sheriff's deed naming ''Mrs. E. L. Chatten'' as grantee was executed on March 8, 1892, and recorded on May 27, 1892. In June, 1893, Chatten's debt to the bank was renewed by the giving of several notes, including one due August 15, 1893, for $696.32, and two due September 15, 1893, for $900 and $984, respectively. As early as March, 1894, the bank's cashier had actual notice that Chatten had bought the land in the name of his wife, and that the

Bank v. Chatten.

deed had been taken in her name. On May 23, 1894, the bank sued on the notes for $696.32 and $900, and caused garnishment process to be served on two other banks. On the next day a written agreement was entered into between the bank and Chatten. It recited that the bank held the three notes just described, which embraced all its demands against Chatten, and that Chatten disputed the correctness of the amount claimed. It then provided for an adjustment of all such claims and disputes and the settlement of the indebtedness in consideration of $2000, to be paid at various times in the future, for a part of which certain security was to be given, and that the garnishment action should be dismissed. Notes partially secured were given at once for the agreed payments, and the action was dismissed in pursuance of the agreement September 4, 1894. At the time of this settlement Chatten was insolvent, and the bank knew of the fact. His financial condition before this was not shown.

On December 4, 1894, the bank sued Chatten upon the new notes, and upon obtaining judgment began the present action to subject the real estate in controversy to its payment. It was not found that the conveyance was fraudulent, and there was a general finding for the defendant. Plaintiff in error claims that under these circumstances it was entitled to recover by virtue of sections 7880 and 7881 of the General Statutes of 1901, reading as follows:

"When a conveyance for a valuable consideration is made to one person and the consideration therefor paid by another, no use or trust shall result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections.

"Every such conveyance shall be presumed fraudulent as against the creditors of the person paying the

consideration therefor; and where a fraudulent intent is not disproved, a trust shall in all cases result in favor of prior creditors to the extent of their just demands, and also in favor of subsequent creditors if there be sufficient evidence of fraudulent intent.''

These sections are, in effect, the same as those adopted in several other states, from which they differ only in being somewhat more specific, the language employed having the evident purpose to cover by express declaration matters elsewhere left to implication. (For references to such statutes, and decisions under them, see 15 A. & E. Encycl. of L., 2d ed., 1166.) The purpose of the first section quoted is to prevent the trust that would otherwise arise in favor of one paying the consideration upon the conveyance of land to another. In the absence of the statute, property so conveyed would, in consequence of such trust, be liable to seizure upon execution against him who paid the purchase-price. (*The Ocean National Bank v. Olcott*, 46 N. Y. 12, 16.) The two sections correspond with those discussed in the case cited, in which it was said:

"After adopting the fifty-first section [our section 7880], it was indispensable to make some provision to preserve the rights of creditors, otherwise the grantee would have held the title absolutely against creditors and all others. Hence the fifty-second section [our section 7881] was adopted, which placed the property in the same relation to creditors as it would have been, if the debtor himself had fraudulently transferred it, and the words used were appropriate for that purpose. The object of the statute was to cut off all interest in the person paying the consideration, and then to declare property liable for his debts.'' (Page 18.) . . .

"It is difficult to perceive any distinction, or any reason for it, between the rights of creditors as to property fraudulently transferred by the debtor him-

self, and property paid for by him and transferred to a third person. Why should creditors have different and superior rights to enforce their debts, in the latter case, to those enjoyed in the former? I can see no reason for any distinction, and I do not believe the statute has created any." (Page 22.)

A subsequent creditor who seeks to set aside a voluntary conveyance made by his debtor encounters a presumption that the deed was made in good faith, which he must overcome by sufficient evidence before he can succeed. (14 A. & E. Encycl. of L., 2d ed., 309.) By the statute quoted the rule is the same where a subsequent creditor seeks to impress a trust for his benefit upon property conveyed to a third person, the consideration being paid by the debtor. So, in either case, a subsequent creditor can obtain no relief if, at the time he gave credit, he knew of the facts regarding the conveyance he seeks to have declared fraudulent. (14 A. & E. Encycl. of L., 2d ed., 282.) Here there was no finding of fraud, and at the time of the dismissal of the first action the bank had full knowledge of the circumstances of the deed to Mrs. Chatten. The important inquiry, therefore, is whether plaintiff is to be considered a subsequent, or a prior, creditor. Chatten was indebted to the bank at a time prior to the execution of the sheriff's deed to his wife, but after that time the bank, after having sued upon its claim and issued garnishment process to enforce it, made a settlement with him, accepted new notes and securities, and dismissed its action. It has been held that no remedy against the fraudulent transfer of property is lost by accepting a renewal note, unless the transaction amounts to a payment, judged by the ordinary tests (*Bank v. Lesser & Lewinson*, 9 N. M. 604, 58 Pac. 345, and cases cited), but

in *Eigleberger and others v. Kibler*, 1 Hill, Eq. 113, 120, 26 Am. Dec. 192, it was said:

"Were it necessary for the purposes of the case, I should have little hesitation in saying that each renewal of the debt, and taking a new security, was a satisfaction of the antecedent one, and that these renewals could not operate to keep in existence a charge on the land which had been previous to them conveyed away."

It is not necessary, however, to review the authorities further, or to consider their application here, as the precise question presented has already been determined by this court. The facts in the case at bar, and those of *Lanphear v. Ketcham*, 53 Kan. 799, 37 Pac. 119, are so similar that they may be considered, for the purpose of the present discussion, absolutely identical. It was there said:

"If the first action had been dismissed at the instance of the plaintiff for defects in the petition only, or without prejudice to a future action, many of the questions discussed on the part of the plaintiffs would be entitled to serious consideration; but the first action was settled as well as dismissed. It was dismissed because it was settled. It was settled for the consideration of the $1800 note, given by William Ketcham to the plaintiffs. This is the note sued on. With full knowledge of all the facts attending the transfer by William Ketcham to his wife of the real estate in dispute, Jewett settled the former action and discharged the attachment, under an agreement with the parties. The plaintiffs cannot assail now the transfer of the real estate, from Ketcham to his wife, upon a transaction prior to the settlement, even if any wrong existed originally concerning the same. The plaintiffs received the note in settlement of the former action, and, therefore, do not stand in the position of prior or existing creditors, with power to attack the transfer as a fraud upon their rights. (*Brooks v. Hall*, 36 Kan. 697, 14 Pac. 236.) Their

status is rather that of a creditor subsequent to the transfer, with full knowledge, at the time of accepting the note in settlement, that Mrs. Ketcham held the title of and claimed the real estate in question. (*Sheppard v. Thomas*, 24 Kan. 780.)''

Within the authority of that case it must be held that the bank was a subsequent creditor, and therefore could not recover.

Other questions have been argued, relating to the statute of limitations and the effect of the dormancy of the judgment against Chatten, but, in view of the conclusions already reached, it will be unnecessary to pass upon them.

The judgment is affirmed.

All the Justices concurring.