No. 24,993.

JAMES P. COLEMAN, Trustee, etc., *Appellee*, v. LEE COSTELLO, *Appellant*.

### SYLLABUS BY THE COURT.

1. STOCK OF MERCHANDISE—*Sold Without Compliance With Bulk-sales Act—Creditor With Full Knowledge of Sale Accepted Cash in Part Payment and a Demand Note for Balance of His Claim—No Waiver by Creditor of Right to Look to Stock of Merchandise for Final Satisfaction of His Claim.* Actual knowledge by a creditor that his debtor was about to sell his stock of merchandise in bulk, and later knowledge that such debtor had sold the same and that neither buyer nor seller had made any effort to comply with the provisions of the bulk-sales act, and a later acceptance by the creditor of a payment on the account due him from the debtor, and a still later acceptance of a demand promissory note for the balance due the creditor—neither of these incidents, nor all of them together, can be held to constitute a waiver of the creditor's right to look to the stock of merchandise for the final satisfaction of his claim, where there was no showing of prejudice to the rights of the purchaser of the stock of merchandise involved therein.

2. SAME—*Conduct of Other Minor Creditors No Waiver of Their Rights.* Minor claims of other creditors against the stock of merchandise sold without compliance with the bulk-sales act, and the evidence relied on to constitute a. waiver of their rights, examined, and the defense of waiver not sustained, nor any fact disclosed which would require a denial of judgment in their behalf.

Appeal from Geary district court; CASSIUS M. CLARK, judge. Opinion filed February 9, 1924. Affirmed.

*James V. Humphrey*, and *A. S. Humphrey*, both of Junction City, for the appellant.

*Robert Stone, George T. McDermott, Robert L. Webb, Beryl R. Johnson*, all of Topeka, and *I. M. Platt*, of Junction City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.:  This action grows out of the sale and purchase of the merchandise stock of a drug store in disregard of the bulk-sales act.

For some time prior to June, 1920, one Frank P. Kibbey conducted a drug store in Junction City, and as an incident thereto he dealt in phonographs which he bought at wholesale from one of his creditors, the Great Eastern Manufacturing Company of Chicago, giving that concern his own trade acceptances therefor.  He sold these phonographs at retail and received so-called trade ac-

ceptances as pay or part pay therefor. Kibbey turned over to the Chicago firm the latter acceptances as collateral security to his own acceptances.

On June 26, 1920, the defendant, Lee Costello, bought Kibbey's entire mercantile stock of goods. No attempt was made to comply with any of the provisions of the bulk-sales act. (R. S. 58-101 *et seq.*) The mercantile stock and fixtures were valued at $20,000; Kibbey's liabilities were $28,000. Later, Kibbey became a voluntary bankrupt, and plaintiff was appointed federal trustee of his bankrupt estate. Claims aggregating $21,368 against Kibbey were satisfied, and this action is to subject the stock transferred to Costello to the payment of certain remaining indebtedness of Kibbey.

For answer, the defendant Costello, in part, pleaded that while negotiations between Kibbey and defendant for the purchase of the stock were pending, Kibbey, who was then indebted to the Chicago company in the sum of $5,955.11, informed that creditor that he was about to make the sale, and after the sale was consummated he informed that creditor that the sale had been effected; and that the Chicago company, with full knowledge of the sale, orally agreed with Kibbey to cancel and surrender the trade acceptances it held against him, and in lieu thereof to take Kibbey's note due on demand for $5,995, and that this agreement was performed.

Claims of certain other creditors were also involved in this action. These will be noticed below.

The trial court made findings of fact and conclusions of law, and gave judgment for the plaintiff trustee on the claims of the Chicago company and of two other creditors, the Tri-State Sales Company of Kansas City, Mo., and the Steinburg corporation.

Defendant appeals, contending that the special findings and undisputed testimony disclosed that the Chicago company had waived its right to look to the Kibbey stock of merchandise in Costello's possession for the satisfaction of its claim. This waiver is sought to be established by these facts:

(*a*) On June 11, Kibbey notified the Chicago creditor of his intention to sell. (*b*) About July 1, Kibbey notified the Chicago creditor that he had sold the store and contents to Costello. (*c*) The Chicago creditor insisted on receiving part of the proceeds, and Kibbey accordingly paid to it "several hundred dollars." (*d*) The Chicago creditor accepted Kibbey's demand note for the balance due, and turned over to him the trade acceptances. (*e*) That

the undisputed evidence (the foregoing) showed a settlement of Kibbey's debt to the Chicago creditor and a consequent waiver of any claim or right under the bulk-sales act.

There are cases, of course, where the taking of a note for pre-existing debt has been construed as a settlement and a consequent waiver or renunciation of some other recourse which might have furnished satisfaction to the creditor. (*Lamphear v. Ketcham*, 53 Kan. 799, 37 Pac. 119; *Bank v. Chatten*, 69 Kan. 435, 77 Pac. 96.) On the other hand, our own decisions have repeatedly held that the taking of a note for an antecedent debt is not a satisfaction or extinguishment of it in the absence of an express agreement of the parties that it was so intended. (*Bank v. Cooper*, 99 Kan. 731, 162 Pac. 1169, and precedents cited and quoted therein; *Bank v. Hoyt*, 103 Kan. 44, 172 Pac. 994.) It cannot be said that any express agreement was made between the Chicago creditor and Kibbey that the former should waive its rights under the bulk-sales act. Such waiver could scarcely arise unless the creditor had voluntarily and intentionally renounced his claim against the stock of goods in defendant's possession, and some act inconsistent with the creditor's right, or inaction of the creditor leading to the prejudice of a third party like defendant, would have to be shown to constitute a waiver. Certainly the fact that the Chicago creditor did not institute an action forthwith on receipt of the information that Kibbey had disposed of the merchandise stock was not a waiver. The creditor might accept a "few hundred dollars" on account, might turn over to the debtor trade acceptances to be collected and applied on the debt, might take a demand note for the balance due, might give the creditor time to straighten out his affairs, might forbear to commence an action to enforce his statutory right as long as the statute of limitations would permit, and in the absence of some showing of prejudice to the party who had taken over the stock of goods, none of these acts and forbearances nor all of them together would constitute a waiver of the creditor's rights under the statute which declares that a sale of the stock of merchandise other than in the ordinary course of business shall be void as against creditors of the seller, unless made in compliance with the statutory requirements. (R. S. 58-101 *et seq.*)

In *Marquette County Sav. Bank v. Kiovisto*, 162 Mich. 554, a grocery stock of merchandise was sold by one Kangas to one Kiovisto in disregard of the bulk-sales act. A creditor knew of the

sale before the price was paid. Kiovisto did not know Kangas had any creditors, and his purchase was made in good faith except for his noncompliance with the act; and the buyer, Kiovisto, was ignorant of the act. The seller, Kangas, gave the creditor a note for his indebtedness, and shortly after the sale he paid half of it, and gave a new note for the balance. When it became due he paid $100 thereon, and again gave a renewal note. It was held that notwithstanding the bank knew of the sale and received a payment on the note from the proceeds of the sale, and repeatedly renewed the note for the diminishing balance due at each of the successive renewals, and notwithstanding the creditor delayed action for nearly two years, there was no waiver or estoppel which would bar or defeat the creditor's right to look to the stock of merchandise for the balance of the debt.

In *Oregon Mill and Grain Co. v. Hyde*, 87 Ore. 163, a creditor's action against the debtor vendor and his ineffectual action in garnishment against the purchaser, was held not to defeat the creditor's right to look eventually to the goods transferred to the vendee in violation of the bulk-sales act.

The case of *First Bank of Texola v. Terrill*, 44 Okla. 719, 145 Pac. 1140, is not out of accord with the general trend of decisions in bulk sales cases. While waiver and estoppel were somewhat involved in that case, the decision mainly held that an irregularity in a good faith endeavor to comply with the bulk-sales act—the notice of the sale had been given to the creditor by the seller instead of by the purchaser as the statute provided—did not vitiate the sale as against a creditor not prejudiced by such irregularity.

In *Rice v. West*, 80 Ore. 640, the notice of the bulk sale was merely defective (not sworn to) and the creditor made a statement which was construed to mean that he "would look wholly to the sellers for payment of his account." This was held to be a waiver of his statutory right to look to the goods in the hands of the vendee for satisfaction.

In the case of *Palo Sav. Bank v. Cameron*, 184 Iowa 183, stress was laid on a creditor's course of conduct, where it knew of the sale, was consulted by the buyer and the seller, approved of the sale, and in effect ratified it. The Iowa statute, unlike ours, does not positively say that a bulk sale is void as against creditors if the statute is not complied with. The Iowa statute requires the vendor to give his creditors a seven-days' notice, by registered mail, of his intention

to sell, giving the terms of the bulk sale, and it declares that a bulk sale without such formalities "will be presumed to be void" as against creditors. The distinction is rather obvious between a sale which is unqualifiedly void as against creditors, and one which is only presumably void. Presumptions of fact can be overcome by evidence. The Iowa court could therefore very readily declare that a creditor who consented to a transaction otherwise presumptively fraudulent against him could not be heard to complain of it.

In *Warren v. Parlin-Orendorff Implement Co.*, (Tex. Civ. App.) 207 S. W. 586, it was held that creditors and others who had ratified a bulk sale, otherwise void as to creditors, and who had asserted rights under the sale, were estopped to dispute its validity. (See, further, 21 C. J. 1135; 27 C. J. 878; 40 Cyc. 254.

The main question before us is easy of solution if it is kept clearly in mind that it is not the vendee who is liable, except incidentally; it is to the stock of goods that the liability attaches. The creditor who has not waived his right, and who has not estopped himself to invoke that right, may continue to look to the goods for the final satisfaction of his claim. As to him there is no sale, there is still an existent stock of goods (no matter who has got possession of it in bulk), on the strength of which the credit was originally extended and to which the assurance of ultimate statutory security was accorded to the creditor.

The trial court correctly held that the Great Eastern Manufacturing Company of Chicago had not waived its right to look to the stock of merchandise in Costello's possession for the satisfaction of its claim against Kibbey.

Touching the accounts of two other creditors, the C. D. Smith Drug Company of St. Joseph, Mo., and the Tri-State Sales Company of Kansas City, Mo., which are discussed in the briefs of appellant and appellee, it appears that the St. Joseph company, some four months after the sale to defendant, did take a note, bearing interest, for the amount due it. The Kansas City company took trade acceptances for its account. It is insisted that these transactions constituted a settlement and satisfaction of these accounts which barred the creditors from looking to the stock of merchandise for payment. The court did not make any specific finding on this point. All the testimony on the subject was elicited by a leading question of defendant's counsel:

"Question. State whether the C. D. Smith Drug Company account was settled by you by the execution of a promissory note? Answer [by Kibbey, witness]. I think it was."

Neither from the abstract nor in the files of this court does it appear what judgment was rendered on the claim made by the plaintiff trustee in behalf of the C. D. Smith Drug Company, but a settlement wholly extinguishing that company's claim against the stock of merchandise would not necessarily have to be deduced from that bit of testimony. The court's conclusions of law which were formulated into the judgment read:

"1. The sale by Frank P. Kibbey of the stock of merchandise and fixtures in question was void as to existing creditors. . . .

"3. The Tri-State Sales Company, Steinburg Corporation and The Great Eastern Manufacturing Company have not waived or lost any right by the acceptance of obligations subsequent to the sale of said drug business, to resort to said stock of merchandise and fixtures for the payment of Frank P. Kibbey. And there is now due said claimants from Frank P. Kibbey the amounts allowed to them by the referee in bankruptcy less the sum of $800 paid on the claim of The Great Eastern Manufacturing Company.

"4. Unless said claims are paid within 10 days an order of sale should issue to the sheriff directing him to sell for the payment of said claims such stock of merchandise and fixtures or so much thereof as may be necessary to pay said claims and the costs of this action and said sale."

The record submitted to us shows no settlement which extinguished the claim of the Tri-State company of Kansas City; and defendant does not complain of the judgment in behalf of the Steinburg corporation.

The record discloses no error and the judgment is affirmed.