Harpham Brothers Co. v. Perry.

---

No. 25,766.

Harpham Brothers Company, *Appellant*, v. C. C. Perry, E. E. Ritter and W. T. Ward, *Appellees* (H. J. Hallenbeck, *Defendant*).

SYLLABUS BY THE COURT.

1. Fraudulent Conveyances — *Bulk-sales Act* — *Estoppel and Waiver*. The record examined concerning a sale of a mercantile stock of goods by the vendor in disregard of the bulk-sales act, and the subsequent disposal of part of the goods at retail by the vendee, and a later sale of the remaining stock in bulk to third parties who made their bargain in conformity with the statute, giving due notice to the plaintiff creditor of the original vendor who, pursuant to such notice, effected a settlement with the original vendor, its debtor, by a consideration partly furnished by the original vendee, and who also assured the vendee and the third parties then negotiating for the stock that a settlement had been effected with the original debtor and that plaintiff's claim against the stock of goods was released. *Held*, that the facts and circumstances constituted an estoppel against any later claim by plaintiff on the goods in the hands of the third parties and constituted a waiver of plaintiff's claim against the original vendee.

2. Same—*Evidence—Instructions*. Other points of minor importance urged against the judgment considered and not sustained.

Appeal from Rawlins district court; WILLARD SIMMONS, judge. Opinion filed May 9, 1925. Affirmed.

*Dempster Scott,* and *Charley E. Scott,* both of Atwood, for the appellant.
*C. A. P. Falconer,* of Atwood, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff corporation brought this action to enforce the provisions of the bulk-sales act against the defendants.

The facts were these:

One Hallenbeck owned a $7,000 stock of merchandise at McDonald in Rawlins county. In January, 1921, Hallenbeck sold and defendant Perry bought this stock of goods without compliance with the bulk-sales law. Hallenbeck owed plaintiff $1,234.84 on account and a large aggregate sum to other creditors. Perry conducted the Hallenbeck business for several months, selling about $4,000 worth of the goods at retail; and in the autumn of the same year Perry entered into negotiations with defendants Ritter and Ward to sell the mercantile stock in bulk to them, but Ritter and Ward made their bargain contingent upon a substantial compliance with the bulk-sales law. In conformity therewith, on October 20, 1921, they caused a notice to be sent to plaintiff and Hallenbeck's other creditors. On October 24, 1921, plaintiff notified Ritter and Ward as to the amount of their claim. On October 29, Ritter and Ward wrote plaintiff saying that their bargain for the purchase of the stock was being held in abeyance pending a release of all claims and requesting that plaintiff send a man to settle its account if it could not be done by mail. Accordingly on November 1, plaintiff sent its agent and credit man, H. F. Gilmour, from its headquarters at Lincoln, Neb., to McDonald, and he made a settlement with Hallenbeck for the following consideration:

$234.84 in cash furnished by Perry,
$500.00 note executed by Hallenbeck,
$500.00 postdated check by Hallenbeck,
$200.00 postdated check by Hallenbeck.

It was also shown in evidence that when Gilmour arrived in McDonald, he said he came in response to the notification he had received from Ritter and Ward. Until the time of settlement, Hallenbeck had not theretofore admitted that he owed plaintiff anything. As an incident to the settlement Gilmour agreed to release plaintiff's claim on the mercantile stock. As he was about to leave for home

Gilmour said to Ward: "We made a settlement all right." And shortly thereafter Ritter appeared and Gilmour said: "Well, I will have to be going—Mr. Hallenbeck is going to take me to Benkelman; we have just made a settlement and so far as we are concerned you fellows can go ahead with your deal." Perry was present when the latter statement was made. Several witnesses testified to these facts, and, indeed, plaintiff's agent's testimony was to the same effect except that, according to his version, the release was only to become effective if and when the note and postdated checks were paid. Against that construction of the agent's statement was the obvious fact that if the checks and note were paid plaintiff would have had no claim to release.

Following that settlement between plaintiff's agent and Hallenbeck on November 1, and in reliance on the assurance given defendants by Gilmour, plaintiff's agent, at that time, Perry and Ritter and Ward concluded their deal for the bulk sale of the stock of merchandise on November 23, 1921, the purchasers paying the agreed price therefor. Later, Hallenbeck failed to provide funds to meet the postdated checks and failed to pay the $500 note, and plaintiff brought an action against Hallenbeck thereon, with what result this record does not show, but it can be inferred that it was fruitless since this action followed.

On the joinder of issues and the evidence adduced by the parties the cause was submitted to a jury which returned a general verdict for defendants and answered special questions, viz:

"1. Did the plaintiff take a note and two postdated checks from defendant, H. J. Hallenbeck, and retain the same, and bring suit on them in this action? A. Yes, he did.

"2. Did defendant, C. C. Perry, pay any money or cause any money to be paid the defendant, H. J. Hallenbeck on or about November 2, 1921, that was paid by Hallenbeck to plaintiff? A. Yes.

"3. If you answer 'yes' to the preceding question, then did Perry pay said money to Hallenbeck to apply on or as a part of the transaction between plaintiff's agent H. F. Gilmour and H. J. Hallenbeck? A. Yes.

"4. How much money, if any, did plaintiff receive on the check given by Hallenbeck to Gilmour on November 1, 1921, and so dated? A. $234.84.

"5. Did the plaintiff ever make any demand on defendants, C. C. Perry, E. E. Ritter and W. T. Ward, for the payment of the Hallenbeck post-dated checks and note due January 1, 1922, and after the same became due and before this action was filed on August 12, 1922? A. No. . . .

"7. When did E. E. Ritter and W. T. Ward pay C. C. Perry for the goods and fixtures formerly owned by H. J. Hallenbeck? A. Nov. 23, 1921.

"8. When did Hallenbeck sell or trade out to defendant, C. C. Perry? A. January, 1921."

Judgment was entered accordingly, and plaintiff appeals.

It is first urged that there was no consideration for Gilmour's agreement to release plaintiff's claim on the stock of merchandise. As to Ritter and Ward, there was all the consideration which law and good conscience required. The law did not forbid them to purchase the stock of merchandise. It only prescribed certain requisites designed to give creditors a fair chance to protect themselves. When Gilmour, pursuant to notice given by Ritter and Ward, came to McDonald and made a settlement with Hallenbeck, and assured defendants that plaintiff's claim was released and that defendants could safely go ahead with their deal, Ritter and Ward had a perfect right to proceed to consummate their pending contract, pay the agreed consideration, and take over the property. Ritter and Ward had complied with the statute, which protected them from liability; moreover, they relied on the assurance of Gilmour, the authorized agent and credit man of plaintiff, that settlement of plaintiff's claim had been effected and that they could proceed in safety to consummate their bargain with Perry, and the equitable principles of estoppel barred the plaintiff from afterwards taking a position contrary thereto.

The foregoing conclusion is not quite so obvious when applied to the situation of Perry. He acquired the goods in disregard of the bulk-sales law, and proceeded to dispose of them as if they were his own. He therefore acquired no title as against Hallenbeck's creditors (R. S. 58-101), although his title was perfectly good as against Hallenbeck himself. (Note in 5 A. L. R. 1517.) But it may well be that Perry did this with his eyes open, not intending to flout the law, but quite willing to assume and pay whatever valid claims of creditors might turn up against the stock of goods if Hallenbeck did not or could not pay. The record does not disclose that Perry knew anything about plaintiff's claim until notice was given to plaintiff of the projected sale to Ritter and Ward some nine months after Perry had acquired the stock from Hallenbeck. There was a lawful consideration for the settlement between Hallenbeck and Gilmour on November 1. Perry furnished $234.84 towards that consideration. That the rest of the consideration did not materialize according to the expectations of plaintiff is not sufficient to vitiate that settlement so far as Perry is concerned. At any time within the statute of limitations after Perry acquired possession of the mercantile stock in January, 1921, plaintiff might have enforced the

provisions of the bulk-sales act against the goods in Perry's hands, and might have required him to account for that portion of them which he had retailed. But plaintiff did not choose to do so. It passed by Perry on November 1, by settling in full with Hallenbeck for a consideration partly furnished by Perry; and knowingly permitted Perry to dispose of the stock to Ritter and Ward. Not until August 12, 1922, some eighteen months after the sale of the stock to Perry, and over nine months after settling with its debtor and giving assurance to Perry, Ritter and Ward that they could go ahead with their deal, did the plaintiff seek to fasten a liability on Perry. A critical analyst of the legal effect of all these facts and circumstances might find some element lacking to constitute an estoppel, but are they not sufficient to constitute a waiver of whatever claim plaintiff had against Perry? In *Coleman, Trustee, v. Costello,* 115 Kan. 463, 223 Pac. 289, the matter of waiver of a creditor's right to proceed against a stock of goods sold in disregard of the bulk-sales act was recognized, and *Rice v. West,* 80 Ore. .640, was cited as a case in point. The latter was a case of a sale of a stock of drugs without strict compliance with the bulk-sales statute, where a creditor of the seller impliedly consented to the sale by stating that he would look wholly to the seller for payment of his accounts. Two years later he attempted to invoke the provisions of the statute, but it was held that he had waived the right to claim its benefits. (See, also, *Torreyson v. Turnbaugh,* 105 Mo. App. 439; *Oregon Mill & Grain Co. v. Hyde,* 87 Ore. 163; *Whitehouse v. Nelson,* 43 Wash. 174; 27 C. J. 878.)

In *Coleman, Trustee, v. Costello,* supra, it was held that forbearance, delay, and a demand for a payment on account and a receipt thereof, and an acceptance of a renewal note for the balance due— which note was not paid, did not constitute a waiver; but here we have the potent circumstance of Gilmour's assurance that a settlement had been effected and that Perry, Ritter and Ward could go ahead with their deal.

In *Street Lighting Co. v. City of Wichita,* 101 Kan. 452, 460, 168 Pac. 1090, it was said:

"A waiver of a contract right is a voluntary and intentional renunciation of it, and some positive act or some positive inaction inconsistent with the contract right is necessary to create the waiver. (*Long v. Clark,* 90 Kan. 535, 135 Pac. 673; 40 Cyc. 253-263; 8 Words and Phrases, 7375-7381.)"

Although here the plaintiff's right was based on the statute and

not on contract, the principles of waiver are identical. Here was a voluntary and intentional disclaimer; here were both a positive act and a deliberate inaction inconsistent with a claim of right to look to the goods or to Perry for satisfaction in the contingency that Hallenbeck should make default. The court holds that the circumstances and the statement and assurance given by Gilmour constituted a waiver of plaintiff's right to look to Perry upon the subsequent default of Hallenbeck. (40 Cyc. 258 *et seq.*).

Noticing briefly other points urged by appellant, the court cannot assent to the contention that it was error to admit evidence touching the agreement to release the stock of goods. Defendants wrote plaintiff to send a man to effect a settlement so that the goods could be released. And all the circumstances which pertinently flowed therefrom were competent.

It is also urged that plaintiff's settlement with Hallenbeck was only conditional. Sometimes such a set of facts may be susceptible of such determination as a matter of law, but here it was not. It was a disputed question of fact. Gilmour testified that the settlement, or rather the release of the goods, was dependent on the payment of the checks and note of Hallenbeck. The other evidence was not in accordance with that view, but tended to show that the release was absolute, and if so, of course, Perry was discharged. And that fact was one for a jury to settle. The law on this point was stated in *Coleman, Trustee, v. Costello,* supra, thus:

"There are cases, of course, where the taking of a note for a pre-existing debt has been construed as a settlement and a consequent waiver or renunciation of some other recourse which might have furnished satisfaction to the creditor. (*Lamphear v. Ketcham,* 53 Kan. 799, 37 Pac. 119; *Bank v. Chatten,* 69 Kan. 435, 77 Pac. 96.) On the other hand, our own decisions have repeatedly held that the taking of a note for an antecedent debt is not a satisfaction or extinguishment of it in the absence of an express agreement of the parties that it was so intended. (*Bank v. Cooper,* 99 Kan. 731, 162 Pac. 1169, and precedents cited and quoted therein; *Bank v. Hoyt,* 103 Kan. 44, 172 Pac. 994.)" (p. 465.)

Fault is found with the instructions given and refused. It is needless to reproduce them here. Of the latter, some were properly refused, particularly the *fourth,* because it took from the jury a question requiring their decision, and the *fifth,* because it was inaccurate and incomplete. The instructions given, particularly the *first, fifth* and *sixth,* adequately covered this case, and contained no material error.

Appellant seeks to make a point out of the fact that on November 11, 1921, ten days after the settlement, Ritter and Ward wrote plaintiff asking confirmation of an alleged statement of Hallenbeck that he had made settlement; and appellant argues therefrom that Ritter and Ward did not rely on the statement of Gilmour on November 1. That was a point worth arguing before the jury. It is of little consequence here. Ritter and Ward closed the deal and paid their money for the goods on November 23, and if plaintiff had not theretofore released the goods on November 1, it had ample time to make it known. It also had abundant time to set about the collection of its due from Hallenbeck, or Hallenbeck and Perry, since first notified, on October 20, of the sale from Perry to Ritter and Ward which was being held in abeyance to await action or settlement of plaintiff's claim. A letter, dated November 21, alleged to have been mailed by plaintiff to Ritter and Ward was offered in evidence. It stated that plaintiff was not quite ready to release the stock. Its significance was for the jury's consideration. Being signed in typewriting, which was contrary to plaintiff's custom, it may have been altogether spurious, and composed and dated at any time for use in this lawsuit only.

A painstaking study of this case fails to disclose any plain palpable error which would either compel or justify a reversal, and the judgment is therefore affirmed.