No. 27,091.

ANDREW F. SCHOEPPEL, Trustee of the Estate of E. B. Hopper,
    Bankrupt, *Appellee,* v. ELIAS PFANNENSTEIL, *Appellant.*

### SYLLABUS BY THE COURT.

FRAUDULENT CONVEYANCES—*Bulk-sales Act—Sale of Undivided Interest by
    One Partner to Copartner.* A sale of an undivided half interest in a part-
    nership stock of merchandise by one partner to his fellow partner is not
    governed by the bulk-sales act.

Appeal from Ness district court; ROSCOE H. WILSON, judge. Opinion filed
February 12, 1927. Reversed.

· *K. W. Pringle* and *G. Austin Brown,* both of Wichita, for the appellant.
*Lorin T. Peters,* of Ness City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This appeal presents the question whether the sale of
an undivided half interest in a partnership stock of merchandise by
one partner to his fellow partner is governed by the bulk-sales act.

Briefly, the facts were these:

For some time prior to October 1, 1922, E. B. Hopper and Elias
Pfannensteil, defendant herein, were partners engaged in merchan-
dising and owned and operated a mercantile store in Ness City. On
that date defendant purchased the undivided half interest of Hopper
for $4,000 in cash. Neither partner made any effort to comply with
the provisions of the bulk-sales act, nor was any notice given touch-
ing the dissolution of the partnership except by oral information to
some of the commercial travelers who supplied the partnership
store with goods. Prior to October 1, 1922, Hopper's part of the work
in conducting the business of the partnership was chiefly that of
bookkeeper, for which service he had been drawing $125 per month
from the business, and after the sale of his interest and retirement
from the firm, Hopper served the defendant as an employee without
change in the nature of his duties or in his monthly stipend.

On July 1, 1924, Hopper filed a voluntary petition in bankruptcy
and was adjudged a bankrupt on the following day. His liabilities
exceeded his assets; some of his creditors concerned in the outcome
of this lawsuit were creditors of Hopper at the time of the sale of
his undivided half interest in the store to defendant.

Fraudulent Conveyances, 27 C. J. pp. 874 n. 16, 875 n. 40, 882 n. 23; L. R. A.
1917D, 623; 12 R. C. L. 526.

Schoeppel v. Pfannensteil.

Plaintiff herein, the federal trustee in bankruptcy, made demand on defendant for an accounting based on the assumed continuing interest of Hopper in the mercantile stock, so far as concerned his creditors, because of Hopper's and defendant's noncompliance with the bulk-sales act. The demand being resisted, this action was begun. Plaintiff's petition, filed January 15, 1925, recited the foregoing facts, invoked his rights under the bulk-sales act as official representative of Hopper's creditors, and prayed for legal and equitable relief.

Defendant's answer contained a general denial, and pleaded his purchase of Hopper's interest in the partnership stock of goods for a valuable consideration on October 1, 1922, and his subsequent exclusive ownership thereof.

At the trial the matters leading to the decisive question of law involved herein were developed by stipulation and without material dispute. The court made findings of fact as outlined above, and found that the value of Hopper's interest in the store at the time of its sale to defendant was $3,000, and gave judgment in favor of plaintiff for that sum.

Defendant appeals, urging various errors, the chief of which raises the question whether the sale of Hopper's undivided half interest in the stock of merchandise to his fellow partner was void as against plaintiff and the creditors of Hopper whose interests he represents because it was not made in conformity with the provisions of the bulk-sales statute, which reads:

"R. S. 58-101. The sale or disposal of any part or the whole of a stock of merchandise or the fixtures pertaining thereto, otherwise than in the ordinary course of his trade or business, shall be void as against the creditors of the seller, unless the purchaser receives from the seller a list of names and addresses of the creditors of the seller certified by the seller under oath to be a complete and accurate list of his creditors and unless the purchaser shall, at least seven days before taking possession of the property, or before paying therefor, notify in person or by registered mail, every creditor whose name and address is stated in said list, or of whom he has knowledge of the proposed sale."

The precise question requiring present solution is new in this state. The cases in other jurisdictions involving the point are not numerous, nor are they quite harmonious. By our statute a bulk sale "of any portion or the whole of a stock of merchandise" in disregard of the statutory regulations is unqualifiedly void as against the creditors of the seller. (*Coleman, Trustee, v. Costello,* 115 Kan.

463, 223 Pac. 289.) In this respect our statute is typical of the general run, although in *Coleman, Trustee, v. Costello,* supra, we noted that the Iowa statute merely declares that bulk sales made in violation of that statute are presumptively fraudulent; and the supreme court of West Virginia, in *Marlow v. Ringer,* 79 W. Va. 568, L. R. A. 1917D, 619, notes that the bulk-sales laws of Idaho, Oklahoma and Oregon are to the same effect. Some of the state courts have also declared that such acts are in derogation of the common law and therefore to be strictly construed (*Yancey et al. v. Lamar-Rankin Drug Co.,* 140 Ga. 359) which would be no excuse for such interpretation under our code (R. S. 60-102), and we have repeatedly said the statute is remedial and therefore to be liberally construed to promote its object and to assist the litigants in obtaining justice. (*Kemmerle v. Wilson,* 110 Kan. 247, 203 Pac. 297.)

Among cases analogous to the one here presented was that of *Daly v. Drug Co.,* 127 Tenn. 412, Ann. Cas. 1914 B 1101, where one Anderson, a druggist, sold a half interest in his business to one Elledge without complying with the bulk-sales statute of Tennessee. Anderson was heavily indebted but informed Elledge that his debts were relatively small and that he, Anderson, would pay them individually. Later, creditors of Anderson made their appearance and demanded payment of their claims. Elledge disclaimed all obligation and said he would resist all such claims in court. Soon afterwards Anderson died and Anderson's creditors sued Elledge to hold him liable for the value of goods to the extent of the interest he had acquired from Anderson. The trial court nonsuited certain of the plaintiff creditors, and they appealed. The supreme court reversed the judgment, and delivered an instructive opinion, from which we quote:

"We are of the opinion that the case before us falls within the terms of the act. The language of the act is: 'A sale of any portion of a stock of merchandise otherwise than in the ordinary course of trade in the regular and usual prosecution of the seller's business, or a sale of an entire stock of merchandise in bulk, shall be presumed to be fraudulent and void as against the creditors of the seller, unless,' etc. A half interest is a portion of the stock. We do not think the act means that it must be a distinct portion or part severed from the whole stock. The sale of a half interest by a merchant for the purpose of taking the vendee into partnership is within the purpose and reason of the act, since it very materially changes the relation of the vendor's creditors to the stock, if such sale be valid. Before the sale a creditor could levy upon the whole stock. After the sale, if valid, the creditor of such vendor

could not levy upon any of the stock, but only upon the vendor's interest in the whole, and in order to obtain this he would have to file a bill in equity and have an accounting with the new partner. So the former owner of the stock might admit three new persons into the business, and so reduce his own holding to a one-fourth interest, and so on as to smaller fractions—at the same time putting the proceeds into his own pocket and holding them beyond the reach of his creditors." (p. 421.)

In *Marlow v. Ringer,* supra, the supreme court of West Virginia held that the transfer by a retail grocery merchant of a half interest in his business and stock of goods to another, in consideration of such other person placing in the store a quantity of goods equal in value to the stock then owned by the merchant, with a view to the formation of a copartnership to continue the business at the same location, constituted a sale of merchandise in bulk, otherwise than in the ordinary course of the seller's trade or business, and was void *in toto* as against the creditors of the merchant because of noncompliance with the bulk-sales law.

On the other hand, in *Taylor v. Folds,* 2 Ga. App. 453, it was held that a sale by one partner of an interest in a partnership bakery business to his two associates was not void although there had been no attempt of the vendor or vendees to conform to the provisions of the bulk-sales act. The court said:

"A sale by one partner of his interest in a mercantile business to his other partners is not within the letter of the act; and the courts will not by construction give the act such an extension as to include it." (p. 454.)

In *Yancey et al. v. Lamar-Rankin Drug Co.* 140 Ga. 359, the supreme court similarly held:

"The act is in derogation of the common law, and of the right to alienate property without resolution; and is therefore to be strictly construed. *Cooney v. Sweat,* 133 Ga. 511, (66 S. E. 257, 25 L. R. A., n. s., 758).

"So construed, the provisions of the act did not apply to a transaction whereby a copartnership composed of two persons engaged in a grocery business sold a two-thirds interest in their stock of goods to two other persons; whereupon one of the original partners retired from the firm, and the same business was thereafter conducted in the name of a new firm, composed of the remaining original partner and the two purchasers. Such transaction did not fall within either of the classes set forth in the first headnote. While it may have been out of the usual and ordinary course of business or trade, it was not a sale or transfer of a stock of goods, wares, or merchandise. See *Stovall Co. v. Shephard Co.,* 10 Ga. App. 498 (73 S. E. 761); *Fairfield Shoe Co. v. Olds,* 176 Ind. 526 (96 N. E. 592), holding that the provisions of the 'sale-in-bulk' law do not apply to a sale by a partner of his interest in a stock of merchandise to his copartner." (Syl. ¶¶ 2, 3.)

The Georgia statute is not literally so all-inclusive in its terms as ours. It does not specifically declare, as in R. S. 58-101, that "the sale or disposal *of any part*" of a stock of merchandise otherwise than in the ordinary course of business shall be void unless made in conformity with the Georgia statute. (2 Park's Ann.. Code of Ga. 1914, §§ 3226-3229.)

In the later case of *Virginia-Carolina Chemical Co. v. Bouchelle*, 12 Ga. App. 661, 78 S. E. 51, where the owner of a stock of merchandise sold a half interest therein to another and took the latter into partnership with him and later sold his other half interest in the business to that partner, the Georgia court of appeals held that the sale was void as against the creditors of the seller since it was made without complying with the bulk-sales act. The court referred to its earlier decision of *Taylor v. Folds*, supra, and said:

"We are unwilling, however, to extend the principle of that decision so far as to include a case like the present, for to do so would practically nullify the sales-in-bulk act and defeat the very purpose which the general assembly had in mind, namely, to protect persons who had extended credit to a merchant on the faith of apparent prosperity indicated by a stock of goods which would be sold out gradually and replenished from time to time." (p. 662.)

In *Fairfield Shoe Co. v. Olds*, 176 Ind. 526, where the Indiana statute is substantially like our own in its declaration that "the sale, transfer or assignment in bulk, of any part or the whole of a stock of merchandise otherwise than in the usual course of trade," etc., "shall be void as against creditors of the seller unless" (p. 529.), etc., the court held that a sale by one partner of his interest in a stock of goods to his fellow partner was not governed by the bulk sales act.

In *Maskell v. Spokane Cycle & Auto Supply Co.*, 100 Wash. 16, L. R. A. 1918C, 929, it was held that a sale and transfer of a stock in trade to a corporation organized to take over the business, the consideration being its capital stock, was not within the requirements of the bulk-sales law. The court said:

"We have held that the object of the bulk-sales law was to prevent the vendor, usually a retail merchant, from selling his stock of goods, pocketing the proceeds, and leaving his creditors remediless (*McAvoy v. Jennings*, 44 Wash. 79, 87 Pac. 53; *Kasper v. Spokane Merchants Asso.* 87 Wash. 447, 151 Pac. 800), and in the latter case that no such result followed where the property was so disposed of as to make it available to the creditors, and hence, the reason for the rule failing, the rule itself failed." (p. 20. See, also, 27 C. J. 882, and 4 L. R. A. Dig. 4709 *et seq.*)

Our time will not permit us to range further afield in search of analogous decisions bearing on this question; but the cases we have noted are sufficient to show that either view can be supported by respectable authority; and we must adopt that view which preferably commends itself to our own notions of justice. The words of the statute, "Any part or the whole of a stock of merchandise," refer to the physical things constituting the stock, and not to the group of interests in the things which constitute property in the true sense. Sale of part of a stock involves severance of some of the things from the others; and sale of the whole involves disposition of all the things in a bulk, without severance of part of them. Sale by one partner to another of his half interest in a stock of merchandise is not a sale of either a part or the whole of the goods, in the sense indicated. There is no segregation of a part, and the selling partner neither owns nor sells the whole. Under the statute, sale involves delivery in the sense of physical change of possession. The purchaser must give notice to creditors at least seven days "before taking possession," and the whole effect of the statute depends on this notice. Personal creditors of a partner may not look directly to partnership goods. The statute involves taking possession by one who is a stranger to the relation of debtor and creditor as it affects privilege to appropriate the goods.

The evil sought to be remedied by the bulk-sales law is this: Without such a law a retailer who has purchased his stock largely on credit may sell it for cash, put the proceeds in his pocket and walk off, leaving the wholesaler from whom it was bought without remedy against it, the new purchaser having a perfect title. It is impracticable for the wholesaler to protect himself by taking a chattel mortgage. It is unconscionable that he should be subjected to the wrong of having the goods he has sold on time, and to which he has a moral right to look for payment, put wholly beyond his reach in this manner. But a sale made by one partner to another does not expose the wholesaler to that hardship. It in no way impairs his remedy and is not within the purpose and meaning of the bulk-sales act.

Under such a sale as that of Hopper to his partner the stock of merchandise was not physically disturbed, neither the actual nor the legal possession being changed thereby (the purchasing partner prior to its sale having had virtually the same all-inclusive posses-

sion of the whole stock of goods as he did after its purchase), and the stock of goods after the sale of Hopper's undivided half interest being just as accessible to the creditors for the satisfaction of their claims for credits extended on account of the partnership, as prior thereto, this court adopts the view that the sale of Hopper's undivided half interest in the Ness City store to his partner, Pfannensteil, in 1922, was not the sort of sale or disposal of a part of a stock of merchandise otherwise than in the ordinary course of trade the legislature by its enactment of the statute intended to regulate and govern for the protection of creditors.

This conclusion renders it needless to consider other errors assigned and argued by appellant.

The judgment is reversed with instructions to enter judgment for defendant.

JOHNSTON, C. J., dissenting.

DAWSON, J. (dissenting): There is nothing in the text of our bulk-sales act to qualify or restrict its meaning. The sale or disposal *of any part* of a stock of merchandise otherwise than in the ordinary course of retail trade is void as against the seller's creditors unless the statute governing such a sale is followed. (R. S. 58-101; *Oil Co. v. Consolidated Companies*, 110 Kan. 245, 203 Pac. 915.) We have expressly held that the creditors of the seller who are protected by the statute are not those only who have extended credit to the seller in the matter of supplying him with merchandise which becomes part of his mercantile stock, but the statute also protects all creditors (*Burnett v. Trimmell*, 103 Kan. 130, L. R. A. 1918E, 1058, 173 Pac. 6.) It is not easy to see why general creditors of a person who owns an entire stock of goods should be protected by the bulk-sales act, but general creditors of a person who owns an undivided half interest in such a stock of goods are not so protected. In either case such creditors may or do give a man credit because he is apparently a man of substance—one who has a stake in the community, and who by reason of the bulk-sales act could not dispose of his tangible property overnight and abscond leaving his creditors in the lurch. Obviously the statute is just as necessary to protect the creditors of a part owner of a mercantile stock as the creditors of one who owns the entire stock. I think the judgment of the trial court on this point was eminently correct, and I am therefore constrained to dissent.